HEARD NOVEMBER TERM, 1878.

CASE No. 702.

MARY E. WHITMIRE, AS ADMINISTRATRIX *DE BONIS NON* OF WILLIAM WESSON, DECEASED, v. W. H. LANGSTON, AS JUDGE OF PROBATE FOR LAURENS COUNTY, ET AL.

1. A judge of probate elected by the qualified electors of his county, holds his office for two years only. *Const., Art. IV.,* § 20.
2. The governor cannot fill a vacancy in the office of judge of probate where the unexpired term exceeds one year. *Const., Art. IV.,* § 11.
3. When a judge of probate rightfully receives a bond belonging to his office, which he collects after his term has expired, but while still assuming, during a vacancy, to discharge the duties of the office, and fails to turn over either bond or money to his successor, when elected, such failure to turn over is a *devastavit* for which his sureties are liable.
4. If Section 2 of act of February 14th, 1870, (14 *Stat.* 338,) was intended to apply to the office of judge of probate, it is to that extent unconstitutional and void.

Before KERSHAW, J., at Laurens, February Term, 1878.

This was an action brought by the plaintiff in the Court of Common Pleas for Laurens county against W. H. Langston and the other defendants, his sureties on his official bond as judge of probate for said county, for certain moneys which said Langston, as judge of probate, collected for said plaintiff and never paid over to said plaintiff or to his successor in office.

Langston was elected judge of probate for said county in June, 1868, and executed a bond, dated July 21st, 1868, of which the condition is as follows:

Whereas, the above-bound W. H. Langston hath been elected to the office of judge of probate for Laurens county—

Now the condition of the above obligation is such that if the above-bound W. H. Langston shall well and truly perform the duties of the said office, as now or hereafter required by law, during the whole period he may continue in said office, then the above obligation to be void and of no effect, or else to remain in full force and virtue.

At the general election in 1870, one Powell was elected judge of probate for said county, but he never qualified or entered upon the duties of the said office, having been killed the day after said election. Langston, without executing a new bond, continued to discharge the duties of said office as judge of probate until the general elections in 1872.

The money sued for in this case was collected by Langston, as judge of probate, in May, 1872, on a bond given to same Langston, as Ordinary for Laurens district, on January 2d, 1860, and made payable to him as Ordinary and his successors in office.

The defence set up was that the judge of probate is elected for the term of two years only, and that the liability of his bondsmen is limited to that time; and the amount in question having been received by Langston after the two years for which he had been elected in 1868, and after the general elections in 1870, that his bond sureties were not liable.

The Circuit judge charged the jury as follows :

The bond is conditioned that the official shall well and truly perform the duties of said office, as now or hereafter required by law, during the whole period he may continue in said office. The constitution declares that the judge of probate shall be elected by the qualified electors of the respective counties for the term of two years.

The act approved February 14th, 1870, passed during the term of office of this officer, Mr. Langston, declares that the then "present county officers shall continue to perform the duties of their respective offices until their successors shall be elected and duly qualified."

The duty of continuing to perform the duties of their respective offices was covered by the condition of the bond. It was a duty imposed after the making of the bond, but the sureties expressly contracted to guarantee the performance of any duties that might thereafter be required by law.

This judge of probate did under the act continue to perform the duties of his office, in the default of a successor, and while so continuing he rightfully received the money claimed in this action and failed to pay it over. There is no controversy as to the facts, and therefore it is my duty to instruct you that the

plaintiff is entitled to recover the amount claimed, with interest from the day he is admitted to have received it, less his commissions on the same—two and one-half per cent. for receiving, and two and one-half per cent. for paying out the same.

All the defendants excepted to this charge.

The jury rendered a verdict for the plaintiff, upon which judgment was rendered.

The defendants appealed to the Supreme Court from the decision rendered in this case upon the following grounds:

1. The defendant, Langston, as probate judge for said county, having received the money received from this case in 1872, some eighteen months after the term of office of the said Langston for which the other defendants had signed his official bond as sureties had expired, it is respectfully submitted that his Honor erred in charging the jury that said sureties were liable for said amount under said bond.

2. The defendant sureties being bound by the bond for the acts of the said Langston only for the term of office for which he had been elected, and the said term having expired in November, 1870, and the money in this case having been received by the said Langston in 1872, while he was holding over, it is respectfully submitted that his Honor erred in holding as matter of law that said sureties were responsible for the amount, and so charge the jury.

*Messrs. Simpson & Holmes*, for appellants.

1. The sureties of Langston cannot be held liable for any defalcation of their principal after the expiration of the term for which he was elected, because their contract was for that period and no longer. They had, and could have had, no conception, at the time they executed the bond, that he would or could hold for a longer time than that for which he was elected. *Chitty on Con.* 454; 2 *Hill* 591; 1 *McC.* 41; *Const., Art. IV.,* § 20; 5 *Rich. Eq.* 227.

2. Langston had no common law right to hold over after his term of office had expired. 30 *Barb.* 193; *S. C.,* 8 *Abb.* 359.

3. The legislature had no power, after his election and during

his term of office, to extend it beyond the two years for which he was elected, and thereby extend the liabilities of the sureties to his bond. The act was unconstitutional and void. 1 *McC.* 250 ; 46 *N. Y.* (1 *Sick.*) 57 ; 52 *N. Y.* (7 *Sick.*) 374 ; 53 *N. Y.* (8 *Sick.*) 648.

4. While the legislature had no power to continue his term beyond the two years, so as to extend the liabilities of the said sureties, yet the said Langston, holding under the said act, and thereby under *color of title,* could legally turn over the papers of his office to himself, as his own successor *de facto.* And having thus turned the bond in question over to himself, (though without giving a new bond,) the sureties to his bond under his former term are not liable for any misappropriation of the funds thereafter collected on the bond for the respondent's intestate. 7 *S. C.* 21 ; 3 *Keyes* 447 ; 19 *How.* 323 ; 14 *How.* 315 ; 24 *Barb.* 587 ; 1 *Desaus.* 452.

5. The language in the condition of the said bond is, in itself, indefinite, and must be restrained and limited by the period for which the law authorized his election, *i. e.,* two years. And the legal intent and meaning of it is, that he would faithfully discharge such duties as the law then required, or should at any time during the two years require to be performed within the said two years, or so much of that time as he should continue in said office. 6 *East* 511 ; 2 *Saund.* 412 ; 1 *T. R.* 295 ; 5 *B. & P.* 175.

6. " Holding over " was not a *duty* imposed by the condition of the bond. 1st. Because it could not be required to be performed within the two years. 2d. It was not a *duty* within the scope of the office at all, but a continuation of all the duties of the office beyond the official term. New duties imposed by law during the term, to bind the sureties must be of a " similar nature and character to those already devolving on the incumbent." 36 *N. Y.* (9 *Tiff.*) 459 ; 3 *Abb. N. C.* 252 ; 1 *Tr. App.* 209.

*Messrs. Todd & Ferguson,* for respondents.

1. The defendant, Langston, is indisputably liable for the moneys mentioned in the brief, whether he was probate judge

according to law or not; and, therefore, the appeal must be dismissed as to him.

2. The sureties on Langston's bond are liable for these moneys, received in May, 1872, because he continued to be probate judge down to and after that date, under the provisions of the act of February, 1870, (14 *Stat.* 338); and because according to their bond, they bound themselves that he should "well and truly perform the duties of said office, *as now or hereafter required by law, during the whole period he may continue in said office.*"

The act of 1870 continued him in office till the election and qualifying of a successor, in 1872. No good objection can be made to that act, because: 1st. It was not in conflict with the constitution of the state, for the constitution does not provide either that a probate judge's exercise of his office shall terminate in two years after his election, or that the holding of an election for a successor shall create a vacancy when the election cannot be made of effect. 2d. Nor is the act in the nature of an *ex post facto* law, for that description applies only to criminal laws. 8 *Peters* 110. 3d. Nor is the act objectionable as impairing the obligation of a contract, for these terms are applicable only to laws which attempt to diminish or discharge obligations. If liable to any objection, that law is to be objected to as retrospective in its action, inasmuch as it may be said that it continues the liabilities of sureties beyond the period contemplated at the execution of the bond. But the sureties took the chances of the probate judge continuing in office longer than two years, as the language of the condition states. Besides, retrospective statutes, to be objectionable, are those only which discharge or impair existing obligations, or deny rights of action previously existing, or divest vested rights. *Potter's Dwarris on Stat.* 162, *and note;* 1 *Kent Com.* 455; 2 *Peters* 380.

3. But conceding that Langston was not *de jure* probate judge in May, 1872, he certainly was *de facto*. Being such, and such under color of law, (act of February, 1870,) a stranger was authorized to pay him money due that officer. 1 *Rich. Eq.* 177.

4. But admitting that Langston's term of office expired in October, 1870, and that he was not thereafter judge of probate, his duty was to turn over the bonds in his office to the clerk of

2 B .

the Court of Common Pleas (there being, as is said, a vacancy in judge of probate's office.) When he failed so to do, there was a breach of his bond, for which his sureties were clearly liable. The case of *Black* v. *Ramey,* 4 *Strob. L.* 79, is full upon this point. And the doctrines enunciated in 1 *Rich. Eq.* 177, and 5 *Rich. Eq.* 491, are to the same effect. It is therefore immaterial which horn of the dilemma the appellants take—either that Langston was or was not probate judge in May, 1872.

5. The constitution of the state provides that the probate judge shall hold his office "for the term of two years." The sureties of Langston as judge of probate contracted for his faithful performance of all duties appertaining to his office so long as he (Langston) should continue in office. That he continued to discharge the duties of his office until after May, 1872, is not denied. It may be claimed, however, that after the expiration of two years the bond was voluntary, and therefore not binding on the sureties. A bond is not void merely because it is voluntary; nor is a voluntary bond void because the condition is for the faithful performance of the obligator's duty to the public. 1 *Bail. L.* 211; 5 *Peters* 128.

April 2d, 1879. The opinion of the court was delivered by

HASKELL, A. J. The statement is, that this was an action brought by the plaintiff against Langston and the other defendants, his sureties on his official bond as judge of probate, for certain moneys collected by the said Langston, judge of probate, for said plaintiff, but not paid over either to the said plaintiff or to his (Langston's) successor in office. Langston was elected judge of probate in June, 1868, and gave his bond, which is conditioned that he "shall well and truly perform the duties of the said office as now or hereafter required by law, during the whole period he may continue in office." The money was collected on a bond which was in the Court of Probate when Langston took possession as judge of probate in 1868. It was collected in May, 1872, nearly two years after the time when, according to law, the term for which Langston had been elected in 1868 had expired. The defence set up by the sureties was, that the judge of probate is elected for two years only, and that the liability of the

bondsmen is limited to that time; and the amount in question having been received by Langston after the two years for which he had been elected in 1868, and after the general elections in 1870, that his bond sureties were not liable. The Circuit judge charged in substance that the condition of the bond obligated Langston and his sureties to the performance of the duties of the office by Langston " as now (then) or hereafter (thereafter) required by law during the whole period he may continue in said office," applied not only to any change in the nature of those duties, but also to an alteration in the duration of the office. And that an alteration in the duration of the office having been effected by the act of February 14th, 1870, by which the judge of probate was continued in office after the expiration of his term and until his successor had been elected and had qualified, and a default having been committed by him while performing the duties of the office during the time intervening between the expiration of his term and the election and qualification of his successor, that his sureties were liable. The appeal is from the judge's charge.

The first question is, whether the judge of probate was continued in office by the act of February 14th, 1870, entitled " An act to provide for a general election of county officers," and of which Section 2 says: " That the present county officers shall continue to perform the duties of their respective offices until their successors shall be elected and duly qualified." If this act was intended to apply to the judges of probate, Section 2 is, to that extent, unconstitutional and void. The constitution, Article IV., Section 20, provides that " a Court of Probate shall be established in each county. * * * The judge of said court shall be elected by the qualified electors of the respective counties for the term of two years." How said office shall be filled when a vacancy occurs is provided for by Section 11 of the same article: " All vacancies in the Supreme Court or other inferior tribunal shall be filled by election as herein prescribed; *provided*, that if the unexpired term do not exceed one year, such vacancy may be filled by executive appointment." In no event other than that of an *unexpired term* not exceeding one year, can the office be filled except *by an election* " *by the qualified*

*electors of the respective counties, for the term of two years."* For that is the manner *"prescribed"* in the constitution, Article IV., Sections 11 and 20. It has been said at length, in so many cases, that it is unnecessary here to repeat further than by saying that when the constitution expressly ordains, the subject is to that extent taken away from the legislative body of the government, and can neither be altered nor repealed. Section 20 is imperative: *"Shall be elected * * * for the term of two years."* Section 11 is equally so: *"All vacancies * * * shall be filled by election* as herein [Section 20] *prescribed."* In this case, there was no portion of an unexpired term, and the executive could not have exercised his power of appointment. The vacancy was occasioned by the legal expiration of the term to which the officer had been elected. To fill the office otherwise than by regular election, as prescribed in the constitution, is a palpable attempt to violate the constitution, and cannot be allowed to stand. The Circuit judge instructed the jury thus: "The judge of probate did, under the act, (act of February 14th, 1870,) continue to perform the duties of his office in the default of a successor, and while so continuing he rightfully received the money claimed in this action and failed to pay it over," and that therefore the sureties were liable. We are unable to concur in the view that Langston "rightfully received the money," although if he had rightfully kept it and paid it over to the proper parties when demanded, that question would be of no moment. But, as things are, it is of importance. Langston could not hold his office beyond the period of two years fixed by law, and, whatever the wording of the official bond, his sureties are only liable for default committed by him during the time that he was in office. We think, too, that the words in the condition of the bond refer to the nature of the duties and not to alteration in the duration of the office. But if the latter was the meaning, it has no legal effect, for the duration of office could not be changed except by amendment to the constitution. Langston could not "rightfully receive" the money on the bond unless he received it as judge of probate, for the bond was payable to the Ordinary and his successors in office, and had been turned over to the Court of Probate and become, under the law, payable to the judge of probate.

But Langston was not judge of probate at the time he collected the money—May, 1872—his term having expired nearly two years before, and therefore he could not "rightfully receive." If he had been entitled to collect the money in May, 1872, his sureties on the official bond given for the term running from 1868 to 1870, could not be held liable, for he could not lawfully collect the money unless he lawfully held the bond, with a power to collect, which could not be unless he was judge of probate at the time. If he had been judge of probate in May, 1872, the fact that he collected the money on the bond would be conclusive evidence of the fact that the bond had been properly turned over, by the judge of probate holding from 1868 to 1870, to his successor holding from June, 1870, to June, 1872. The fact that both are the same person makes no difference in this respect, for the terms of the offices are distinct and separate, and if there is evidence that at the expiration of the first term, the funds were properly turned over to the successor, although the person be the same, the sureties on the official bond for the first term are thereby discharged. *Vaughan* v. *Evans*, 1 *Hill Ch.* 414 ; *Field* v. *Pelot*, *McM. Eq.* 370 ; *Enicks* v. *Powell*, 2 *Strob. Eq.* 196.

The case of *Vaughan* v. *Evans* is questioned by Harper, Ch., (who delivered the opinion in it,) in the subsequent case of *Field* v. *Pelot*, but the explanation of *Vaughan* v. *Evans*, by Johnson, Ch., in his separate opinion in *Field* v. *Pelot*, is very satisfactory, and is clear on this point, that in *Vaughan* v. *Evans* it was held "that a surety is discharged if no act of mal-administration was committed during his time; provided he can show that at the expiration of that time the trust fund passed into hands lawfully entitled to the possession of it." Page 400.

The case has always been recognized as authority, and the same doctrine is upheld in *Street* v. *Laurens*, 5 *Rich. Eq.* 227. But the facts, as admitted, show that Langston went out of office in June or July, 1870, and that up to May, 1872, when this money was collected by him, there had been no qualified successor, and that he, Langston, had remained in possession of the bond. It is further admitted that there has, since May, 1872, been a judge of probate in that county, and that Langston has failed to turn over to him either the bond or the money in ques-

tion. It is manifest that he could not turn over the bond, for the money had been collected and the bond given up before his successor had been elected. One of the duties of the office for which the sureties are liable is to turn over the property and funds in the office to the successor. Anything not then properly accounted for is a *devastavit*, and, by legal presumption, it was committed during the term. The view on this point is thus expressed by Harper, Ch., in *Field* v. *Pelot, p.* 384: "If a guardianship should be revoked, and so continue, the surety would be liable for everything which the guardian had received up to that time and should afterwards fail to pay over. Nor would it be necessary to show that the guardian had actually wasted the funds, or committed any act of mal-administration before the revocation. But if, after the revocation, the guardian, as an individual, should obtain the unauthorized possession of a part of the infant's estate, the surety would not be held liable for that."

The defence contained in the last sentence cannot be set up in this case, for Langston had received the bond in his official character. These sureties would have had a good defence if Langston had been his own legal successor. That defence, however, is prevented by the facts as admitted, and they, the sureties, are obliged to rest solely upon the ground that the wrong was committed after he, Langston, went out of office. By the law as above expressed, that defence cannot avail, nor should it; for the sureties are bound for whatever comes into the hands of the office while he holds his trust, if it is received by him under the trust. They pledge themselves to a given amount that their principal will not commit a breach, or that if he does they will be responsible, and upon such security the interests of many depend, and demand protection. But the point is decided in *Lowndes* v. *Pinckney,* 1 *Rich. Eq.* 155. In that case the commissioner in equity had not turned over to his successor a bond given to him as commissioner in equity, but had retained it and collected the money on it. The court says: "It [the bond] was not delivered over to his [the commissioner's] successor within the period prescribed by law, nor for six years afterwards. * * * In the judgment of the court, the sureties of Mr.

Elliott [the commissioner] are responsible for the sums thus received by him in consequence of this neglect or violation of duty. * * * It may be that Mr. Elliott supposed himself entitled to retain the bond and receive the money, either as receiver or as private agent of the parties, and that he was not bound to deliver it over to his successor under the provisions of the act of 1821. But this error of judgment does not alter the consequences of the act."

That case made a stronger showing for the sureties than this, and there was a difference of opinion among the members of the court; but we follow its decision upon the point in question, and especially are we relieved from any doubt in so doing, for the reason that the principal grounds for the dissenting opinions do not exist at all in this case. Besides, the sureties rest here upon technical defence. It is plain that it was thought that Langston was continued in office by the act of February, 1870, and that the old bond remained as security. For if that had not been thought, a new bond would have been required. If the sureties had any doubt upon that subject, they had their remedies, and could have prevented any waste by Langston. They are held by this decision simply to their original liability, for the safe keeping and proper accounting concerning all that went into Langston's hands as judge of probate during the two years, 1868–1870, and no more. While the Circuit judge may not have expressed the law as it is viewed by this court, his conclusion of law was correct, and we see no reason why a new trial should be granted. As the facts admitted stand, the sureties are legally liable, and if the charge of the judge had been in accordance with these views, the conclusion would have been the same, and could not have changed the result. The attempt on the part of Langston to appeal is without any foundation; the facts show his liability, whatever had been the decision with regard to his sureties.

The judgment is affirmed. Motion refused.

Appeal dismissed.

WILLARD, C. J., and McIVER, A. J., concurred.